IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: | : | CASE NO. H 83mc62 (PCD) |
| ANTHONY R. MARTIN-TRIGONA. | : | |
| Anthony R. Martin-Trigona | : | |
| v. | : | JUDGE: Peter C. Dorsey |
| HAROLD LAVIEN, et al. | : | |
| and | : | |
| ANTHONY R. MARTIN-TRIGONA | : | |
| v. | : | |
| WILLIAM F. SMITH, et al. | : | |

## MEMORANDUM IN SUPPORT OF APPLICATION

Now comes Complainant Craig T. Conley ("Conley"), *pro se*, and hereby respectfully submits the following Memorandum in support of his November 22, 2005 Application Pursuant to Order.

### MEMORANDUM

**A.   INTRODUCTION**

As set forth in Conley's Application, Martin has repeatedly violated this Court's nationwide Order of Permanent Injunction via multiple recent Federal Court filings in Ohio (as well as previously in a multitude of Federal Court filings in other States).

Specifically, and with reference to those Ohio Federal Court filings, Martin has, *inter alia*, without prior leave of Court and

in direct and intentional violation of this Court's Order, filed a Complaint, a Notice of Removal, Motions in an action in which he was not a party and an Appeal; and, in one or more of those actions, Martin has, also in direct and intentional violation of this Court's Order, informally communicated with the Court and/or the Courts' Clerks via letter.

Additionally, consistent with his well established *modus operandi*, Martin's frivolous/vexatious filings in the aforesaid Federal Court actions included the "usual" false and viciously scurrilous *ad hominem* attacks.

In sum, there is no question here that Martin has intentionally, repeatedly and maliciously violated this Court's Order. And, perhaps more importantly, there is no question, given Martin's horrific history of vexatious litigation, that he will continue to violate this Court's Order unless and until he is aggressively prosecuted for criminal contempt thereof.

**B.    ARGUMENT**

At the outset, there also is no question that this Court's Order, both by its plain language and by U.S. Supreme Court pronouncement, has nationwide applicability.  (See, *Leman v. Krentler-Arnold Hinge Last Co.* (1932), 284 U.S. 448, 451.)

Indeed, Martin himself has, in a rare demonstration of candor, admitted that he is in fact subject to this Court's Order, even in the Ohio Federal Court actions now *sub judice*.  (See attached true

file-stamped copy of one of Martin's many frivolous/vexatious filings in U.S. District for the Northern District of Ohio Case No. 5:05 CV 02194.)

As stated by the Court in *Berry v. Midtown Service Corp.* (2d Cir. 1939), 104 F.2d 107, 110, "Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender".

Further, as stated by the Court in *Stiller v. Hardman* (2d Cir. 1963), 324 F.2d 626, 628, ". . . violation of an injunctive order is cognizable in the court which issued the injunction regardless of where the violation occurred".

Finally, as held by the Court in *Waffenschmidt v. Mackay* (5th Cir. 1985), 763 F.2d 711, citing to *Leman, supra*, "Enforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order"; and, "A [Federal] court may therefore hold an enjoined party in contempt, regardless of the state in which the person violates the court's orders".  (Reference *Leman, supra*, at 240 and 241.)

In sum, it is respectfully suggested that this Court has both the authority and the affirmative duty to find Martin in criminal contempt of its Order for his blatant and repeated violations thereof in Ohio.

Accordingly, Conley's Application should forthwith be granted and this Court should immediately appoint a special prosecutor to initiate criminal contempt of Court proceedings against Martin.

**C.   CONCLUSION**

For the reasons set forth hereinabove, this Court should find Conley's Application to be well taken and should grant the relief therein requested.

                              Respectfully submitted,

                              _____
                              COMPLAINANT CRAIG T. CONLEY, *pro se*
                              604 Unizan Plaza
                              220 Market Avenue South
                              Canton, Ohio   44702
                              330/453-1900
                              330/453-2170 [Fax]

**PROOF OF SERVICE**

A copy of the foregoing Memorandum was served, by regular U.S. Mail this 29th day of November, 2005, upon the U.S. Attorney for the District of Connecticut, 450 Main Street, Room 328, Hartford, Connecticut 06103 and upon Anthony R. Martin, P.O. Box 1851, New York, New York 10150-1851.

                              _____
                              COMPLAINANT CRAIG T. CONLEY, *pro se*

FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

2005 SEP 29 AM 11:31

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO

ANTHONY R. MARTIN, )
)
    Plaintiffs, )
)
vs. ) CASE NO:5:05CV2194
)
BENJAMIN SUAREZ, et al., ) JUDGE ADAMS
)
) MAGISTRATE JUDGE GALLAS
    Defendants. )

## VERIFIED MOTION TO STRIKE MOTION TO DISMISS AND RESPONSE TO "MOTION TO DISMISS" FILED BY PRO SE ATTORNEY CRAIG CONLEY

On September 27, 2005 plaintiff received from the Court a faxed order directing his response to a "Motion to Dismiss" filed by pro se attorney defendant Craig Conley. The Court granted plaintiff until October 27th to respond, but because Conley's motion is frivolous and scurrilous Conley's motion should be stricken and denied forthwith.

1. Conley's claims

    It is not clear whether Conley has filed a bona fide motion to dismiss, or is just using this Court as his latest venue to sling mud at the plaintiff.

The first thing a competent attorney would do is "check the court file." A lawyer checking the Court file could not possibly

Case 5:05-cv-02194-JRA Document 20 Filed 11/30/2005 Page 6 of 11
Case 5:05-cv-02194-JRA Document 6 Filed 09/29/2005 Page 2 of 7

2

have filed Conley's motion. Therefore, Conley's behavior is frivolous and malicious and should be stricken and denied.

## 2. The old injunction

Conley's diatribe against plaintiff arises out of a twenty year-old injunction, which itself arose when plaintiff disclosed endemic fraud in the local federal court in Connecticut (thereby incurring judicial ire and retaliation).

Unlike Conley, who is a genuinely unethical lawyer, plaintiff has never done anything unethical. Indeed, plaintiff resigned from Suarez Corporation and Benjamin Suarez when the Suarez Family's criminal behavior began to rival that of the fictional Sopranos.

The Suarez' were engaged in an international blackmail and extortion scheme against their former husband/son-in-law, and were seeking to unlawfully spy on public officials in California to deflect an investigation arising in that state using the same blackmail/extortion tactics. Plaintiff wanted no part of such corruption--and quit.

Suarez then began a pattern of harassing and retaliating against plaintiff. All of this miscreant behavior is documented in the complaint.

## 3. Plaintiff complied with the injunction

Plaintiff is indeed subject to an injunction, and he complied filly with the Connecticut order in filing this lawsuit. He sent the Clerk of this Court and Judge James Gwin,

Case 2:83-mc-00082-PCD   Document 1020   Filed 29/29/2005   Page 7 of 11
Case 5:05-cv-02194-JRA   Document 6   Filed 09/29/2005   Page 3 of 7

3

who was/is hearing a related case, a boldfaced letter alerting them to the injunction. A copy is attached. (Judge Gwin was already aware of the Connecticut order, see below.)

Plaintiff also submitted a motion seeking permission to file, as well as a proposed order. Plaintiff did all that he could do.

For Conley to accuse plaintiff of some sort of nefarious behavior based on plaintiff's obvious compliance with the injunction order is obviously impossible. Therefore, Conley must have had an ulterior motive in filing his attacks, namely to engage in the same type of malicious behavior that Conley routinely engages in, smearing his adversaries and seeking to defraud tribunals.

### 4. Who is Benjamin Suarez?

If anyone is a vexatious litigant in this Court, it is Benjamin Suarez, as this Court is well aware. Suarez manifests the classic mind set of a person suffering from a paranoid personality disorder. Suarez believes that what he believes is true, and the only truth. Anyone who disagrees with Suarez must be smeared and destroyed.

Recently Suarez consented to an injunction against himself, and then mailed a letter to tens of thousands of persons claiming the injunction against himself was a "victory" that Suarez had won in this Court!

4. <u>People who live in glass houses
   (or steal from their employees)
   should pay their management consultants</u>

Conley's latest sliming of plaintiff using the Connecticut injunction and other scurrilous attacks is nothing new in this Court. Indeed, Judge Gwin has heard it all before. Judge Gwin was moved to write in an order (extract attached) that "Presumably the plaintiffs hired Martin to provide the kind of advice that had gotten Martin in such trouble before." In point of fact, Martin was only attacked in Connecticut because he exposed corruption, not because he engaged in corrupt behavior.

Judge Gwin characterized an earlier complaint filed by Suarez against plaintiff herein as a "worthless complaint," see attached excerpt.

Benjamin Suarez has accused virtually all federal judges of being crooks (see attached excerpt) and has no doubt spied on this Court (Judge Adams) as well as other judicial officers and public officials across Ohio and the entire nation (see Complaint).

Well, it is time for Mr. Suarez to be told that he has been running up plaintiff's tab, and now he has to pay the bill, something Benjamin Suarez notoriously dislikes. The allegations of the Complaint state that Suarez routinely steals from his minimum-wage employees (as well as higher paid employees) by promising them "profit sharing" and then putting the bulk of the

Case 2:83-mc-00062-PCD   Document 20   Filed 09/29/2005   Page 9 of 11
Case 5:05-cv-02194-JRA   Document 6   Filed 09/29/2005   Page 5 of 7

5

"profits" to his own benefit without allocating a fair share to the employees.

Mr. Suarez is not a Sunday School teacher. Mr. Conley, who is Suarez's latest lawyer-liar, should know better than to slime plaintiff, when the slime oozing out of the House of Suarez is far worse and much more pernicious. (Obviously, for reasons that will become obvious to this Court, Conley has no business in federal court and is a threat to Suarez, not an asset.)

## CONCLUSION

Plaintiff has done nothing to justify Conley's latest attacks, any more than plaintiff has done anything in the past to justify Conley's prior attacks.

Plaintiff complied with a Court order in good faith, submitted the necessary documents, and his lawsuit was docketed by the Clerk with full awareness of those materials (see attached). Conley's motion should be denied and stricken, to send Mr. Conley a message and lesson that the misbehavior he has manifested in state court will not be tolerated in federal court.

## VERIFICATION

Pursuant to the provisions of 28 U.S.C.A. Sec. 1746 plaintiff undersigned attests that the foregoing claims are true and correct under penalty of perjury, on personal knowledge where indicated and on information and belief where apparent.

Executed: September 27, 2005

Respectfully submitted,

ANTHONY R. MARTIN
P. O. Box 1851
New York, NY 10150-1851
Toll-free tel. (866) 706-2639
Toll-free fax (866) 707-2639
E-mail: andymart20@aol.com

CERTIFICATE OF SERVICE

I certify I have served a copy of this document by U. S. Mail on Craig Conley, 220 Market Avenue South, Canton, OH 44702 on September 28, 2005.

ANTHONY R. MARTIN

Case No. 5:05-CV-696
Gwin, J.

legal system." *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1385 (11th Cir. 1993) (per curiam). The District Court of Connecticut permanently enjoined him from "filing or attempting to initiate any new lawsuit, action, proceeding, or matter in any federal court . . . without first obtaining leave of that court" and complying with several procedural requirements. *See Martin-Trigona v. Alvien*, 592 F. Supp. 1566, 1571 (D. Conn. 1984), *aff'd*, 763 F.2d 140 (2d Cir. 1985), *cert. denied*, 474 U.S. 1061 (1986). Plaintiffs cite several cases where courts declared Anthony R. Martin to be the same person as Anthony R. Martin-Trigona. *See Martin v. Florida*, 833 So. 2d 756, 757 n.1 (Fla. 2002); *Martin v. U.S. Dep't of State*, 245 F. Supp. 2d 92, 92 (D.D.C. 2003).

Somewhat amusingly, the Plaintiffs now argue that these injunctions should bar Martin from removing this action to this Court. However, Plaintiffs hired Martin to afford litigation advice after these injunctions were entered. Presumably, the Plaintiffs hired Martin to provide the kind of advice that had gotten Martin in such trouble before.

The Plaintiffs argue that Defendant Martin's failure to request leave to file his notice of removal is a sufficient basis for remanding to state court. The Plaintiffs' argument fails because this is not a proper basis for remanding this case to state court. Certainly, the Court may dismiss suits initiated by Martin when he fails to comply with the permanent injunction. *See Martin-Trigona v. Shaw*, 986 F.2d 1384, 1388 (11th Cir. 1993) (upholding dismissal of lawsuit for violating the injunction from filing or attempting to initiate any new lawsuit in federal court without first obtaining leave of federal court). However, Plaintiffs have not cited any cases where the permanent injunction applied to cases where Martin was a defendant.

On its terms, the permanent injunction does not apply to deprive Defendant Martin of the ability to remove this case to federal court. *Martin-Trigona*, 592 F. Supp. at 1571. The permanent injunction

-19-